W. T. TADLOCK et al. v. TOBITHA SHEPPARD MIZELL et al.

(Filed 18 April, 1928.)

**1. Deeds and Conveyances—Construction and Operation—Estates and Interests Created—Deed to Building Carries Land on Which Situated.**

A deed sufficient to convey real property in fee simple, describing with sufficient definiteness of location "a certain house or tenement" in a town, conveys the title to the lot that the building covers, in the absence of the intent of the grantor otherwise appearing in the instrument by a proper interpretation thereof.

**2. Same—Intent of Grantor—Evidence Thereof.**

A sufficient deed conveying a certain house or tenement on lands in fee simple, containing in the warranty of title a clause in parentheses, "but not the land upon which it is situated" does not alone show a sufficient intent of the grantor to convey only the house or tenement as personal property, and not the lands.

**3. Limitation of Actions—Against Unincorporated Town in Adverse Possession of Street.**

When sufficient adverse possession of a street of an unincorporated town by the present owners and those claiming under them has been shown, for thirty-five years for a period of time prior to the enactment of chapter 224, Public Laws 1891; C. S., 435, the right of the town to the use of the street is barred by the statute of limitations.

CIVIL ACTION before *Daniels, J.,* at February Term, 1928, of BERTIE.

On 12 November, 1856, David Outlaw conveyed to John S. Sheppard, his heirs and assigns "a certain house or tenement in the town of Windsor, in the county aforesaid, situate in the street between the warehouse and William Gray and the lot of Jos. B. Spivey, being the same occupied by the late James H. Cherry at the time of his death. To have and to hold the said bargained tenement, or house, together with all rights and privileges to it appurtenant, or anywise belonging to him, the said John S. Sheppard, his heirs and assigns, to his and their only proper use, benefit and behoof. And I, the said David Outlaw, do covenant and agree, for myself, my heirs, executors and administrators, to and with the said John S. Sheppard, his heirs and assigns to warrant and defend the title to the said house or tenement (but not the land upon which it is situated), against the lawful claim, title or demand of each and every person whatsoever." The foregoing deed was duly recorded on 23 April, 1857.

John S. Sheppard died intestate in 1881. The building referred to was burned in 1925. The heirs at law of Sheppard made application to the town of Windsor for a permit to rebuild upon the land covered by said building and the town refused to issue a permit upon the ground

that the land upon which said building was situate was a part of a public street of the town of Windsor.

The evidence tended to show that Sheppard went in possession of the property upon the execution of the deed in 1856, and remained in possession until his death in 1881, and that his heirs at law have been in possession of the property, receiving the rents and profits thereof since his death. During his lifetime Sheppard kept the postoffice in the building, and afterwards a shoe shop and grocery store. The evidence further tended to show that the building covered the lot.

The following formal admissions were made by the parties upon completion of the reading of the pleadings:

"1st. That the town of Windsor was incorporated under an act of the General Assembly of 1776, chapter 26, on 5 December, and its various streets, including Granville Street, were laid out and marked off, and the land in question was within the boundaries of said Granville Street when the same was laid out."

"2nd. That on 12 November, 1856, David Outlaw executed and delivered to John S. Sheppard a deed, which was registered on 23 April, 1856, in Book LL, page 10, Bertie County Public Registry, which deed is set out in the exhibits to the complaint, and appears in the record. That upon the execution and delivery of the said deed from David Outlaw to John S. Sheppard, in 1856, the said John S. Sheppard went into possession of the said property therein conveyed and remained in possession of the same up until his death in 1881."

"3rd. That John S. Sheppard died intestate in 1881, and thereafter on 12 June, 1897, his heirs at law instituted a special proceeding to sell the house and lot upon which it was situated for partition among his heirs at law, and in said special proceeding the said lot was duly sold under order of the Superior Court of Bertie County to Tobitha S. Mizell, Emma Morris and Cassie Morris by deed of record 6 November, 1897, Book 91, page 303, Bertie County register of deeds' office, since which time the defendants, Tobitha S. Mizell, Emma Morris Harrell and Castine Morris Persons have been in possession of the said property up to the burning of the said house on 16 November, 1925."

Upon the admission and reading of the deed from David Outlaw to John S. Sheppard, his Honor was of the opinion, and so held that the said deed conveyed not only the house upon the lot of land in question, but conveyed the land upon which it stood.

The following issue was submitted to the jury: "Did the defendants, Tobitha S. Mizell, Emma Morris Harrell, Castine Morris Persons, and those under whom they claim, occupy the 'Sheppard Store Lot,' and hold the same adversely for seven years or more between the years 1856 and 1891?"

The jury answered the issue Yes, and from judgment upon the verdict the town of Windsor appealed.

*Craig & Pritchett for town of Windsor.*
*Hugh G. Horton for heirs at law of J. S. Sheppard.*

BROGDEN, J. Does the conveyance, by deed, of "a certain house or tenement" include the land upon which said house is situate? The identical question was involved in the case of *Broadhurst v. Mewborn,* 171 N. C., 402. The Court said: "The devise of a 'house,' when referring, as in this case, to the dwelling-house of the owner, has been held the equivalent of the word messuage, and, in the absence of some term or clause restrictive of its meaning, it is said to convey the lot on which the dwelling is situate, together with the outbuildings customarily used by the owner as a part of his residence." To the same effect is *Wise v. Wheeler,* 28 N. C., 196. The language of the Court is as follows: "We think his Honor was correct in his decision, as to the construction of the deed. The court was called on by the plaintiff's counsel, to put a construction on it. By a conveyance of the store-house and the other houses, the lot upon which they stood was also conveyed, as there is nothing in the deed to control the description, and exclude the lot; and because the deed does convey all of the grantor's property, of every kind." In the *Wise case, supra,* the language was as follows: "The store-house wherein Wheeler had a store, now occupied by him as a post office, with the outhouse and office adjoining."

The Supreme Court of Appeals of West Virginia referred to the question in *State v. Board of Education,* 76 S. E., 127, quoting with approval Devlin on Deeds, section 1200, as follows: "Courts have frequently decided that a conveyance of a building or barn, used as a term of description, will convey the land on which the building or structure is erected." It has been further held that "a grant of a house includes land under it." *Hawkins v. Wilson,* 1 W. Va., 117. Also in *Gidley v. Lovenberg,* 79 S. W., 835, the Court of Appeals of Texas said: "That the term 'buildings' or 'houses' include the real estate on which they are situate, unless the general meaning of the terms is modified by the language of the context, has been decided." *Cassiano v. Ursuline Academy,* 64 Texas, 675. It has been held that the conveyance of "a certain tenement, being one-half of a corn-mill, with all privileges and appurtenances" includes the land upon which the building stands as well as water privileges. *Gibson v. Brockway,* 8 N. H., 465. See note 15 L. R. A., p. 652.

The town of Windsor contends that the condition in the warranty clause of the deed to the effect that the grantor would "warrant and de-

fend the title to said house or tenement (but not the land upon which it is situated)," indicates an intention on the part of the grantor to exclude the land. We do not concur in this construction. The conveyance has all the indicia of a formal conveyance of real estate. It is familiar learning that such formality is neither required nor usual in sales of personal property. The words of the warranty clause "but not the land upon which it is situated" are placed in parentheses, and, as we construe them, constituted a declaration upon the part of the grantor that he did not warrant the title to the land because the land was situated in a public street of the town of Windsor.

It is to be observed that at the time the deed was made and possession taken thereunder by the grantee, that there was no statute of limitations barring the right to acquire title to a public lot, street, lane, alley, square or other public way of any kind by reason of any occupancy thereof. Such a statute of limitations was enacted on 3 March, 1891, as will appear by reference to Public Laws 1891, chapter 224, now C. S., 435. Therefore, the grantee and those claiming under him were in possession of the property for thirty-five years prior to the passage of the statute of limitations. There was sufficient evidence of adverse possession to be submitted to the jury and the verdict of the jury, upon the record, is determinative of the controversy.

No error.