CARMEN SÁNCHEZ MARTÍNEZ ET AL., Plaintiffs and Appellants, *v.* JOSÉ MARÍA RODRÍGUEZ DOMÍNGUEZ, Defendant and Appellee.

No. 8125. Argued June 5, 1940.—Decided June 13, 1940.

*Simón Largé* and *Nicolás Lecároz Largé* for appellants. *Miguel Parga, Jorge V. Toledo* and *José Rodríguez* for appellee.

Mr. Justice Travieso delivered the opinion of the court.

There is involved herein the recovery of a lot measuring 588.50 square meters located in the town of Río Piedras. In the complaint it was alleged in substance as follows:

That Gumersinda López Cepero acquired said lot in 1882 by purchase from Juan del Toro and built thereon a house, No. 2 on Borinquen Street, in 1883; that by virtue of the proper procedure the possession thereof was declared in favor of this lady, who recorded her right in the registry, in 1888; that in January 1889, Mrs. López Cepero sold her house and lot to Vicente López Cepero, who built thereon another house, marked with No. 4 on Borinquen Street, and the two houses and lot were recorded in his name; that Vicente López Cepero died in 1903 leaving a will wherein he instituted as his sole heirs his widow and children, plaintiffs herein; that upon the partition of the estate, house No. 4, valued at $650, was awarded to the widow in partial payment of her hereditary share, and in house No. 2, valued at $2,300, she was awarded a share amounting to $1,145 in full ownership and another share amounting to $1,155 in usufruct, the naked title being awarded to the other three heirs; that at the time of said partition no allotment was made of the lot on which the said two houses are situated, either to the heirs or to any other person, and that the plaintiffs have continued to be the sole and exclusive owners of said lot by title of inheritance which they accepted; that on October 13, 1916, the plaintiff Carmen Sánchez Martínez sold to Rufino Rodríguez Domínguez house No. 4, but not the lot on which

it stood, for $1,000; that on April 13, 1917, pursuant to an authorization granted by the district court, the said Carmen Sánchez Martínez and her three children sold house No. 2, but not the lot on which the same stood, to the commercial partnership Sucesores de Pérez Hermanos, *S. en C.;* that upon the dissolution of said partnership, the said house No. 2 was awarded to the partner Rufino Rodríguez Domínguez in partial payment of his share of the partnership's assets; that in 1933, Rufino Rodríguez Domínguez brought several suits against the plaintiffs herein to compel them to execute deeds correcting the previous ones in the sense of making it appear that the sale of the houses above mentioned included the lot or lots on which said houses stood; that the complaints in those suits were dismissed; that in the decision rendered on October 21, 1933, by the District Court of San Juan, in the proceedings for judicial authorization, it was declared that the sale of the undivided interest of the two minors referred exclusively to the houses, without covering any lot.

It was further alleged in the complaint that on September 19, 1936, Rufino Rodríguez Domínguez sold to his brother, defendant herein, the property described in the complaint, as consisting of a lot and two houses standing thereon, when both had notice from the registry that the lot did not belong to the vendor but was the property of the plaintiffs since the death of Vicente López Cepero y Martínez; and that the defendant occupies said lot without just title or good faith and against the will of the plaintiffs.

The defendant answered and specifically denied that the lot in question had been excluded from the sales and transfers referred to in the complaint, or that said lot had been reserved in favor of the plaintiffs, and on the contrary alleged that in the sale made to Rufino Rodríguez Domínguez the lot on which the houses stood was included. The remaining portion of the answer consisted of specific denials of each and all the essential averments of the complaint. As special

defenses, the defendant set up the prescription of the action and his status as a third person (*tercero*).

The plaintiffs have taken the present appeal from a judgment whereby the complaint was dismissed and they were adjudged to pay costs including $500 as attorney's fees.

The appellants rely on eight assignments of error. By the first, they maintain that the court *a quo* erred in dismissing the complaint and in failing to acknowledge the plaintiffs as the sole owners of the lot. In the remaining ones the trial court is charged with having committed manifest error and with having acted with passion, prejudice, and partiality in the weighing of the evidence, in the interpretation of certain documents, and in adjudging the plaintiffs to pay costs and attorney's fees on the ground of obstinacy. We will consider first the assignments relating to the weighing of the evidence, and for this purpose we will have to make a summary of the latter.

█ █ The plaintiffs introduced the following documentary evidence: (a) A deed of partition of the estate of Vicente López Cepero dated April 28, 1904. The two houses and the lot the object of this litigation appear therein listed, described, and valued thus:

"A two-story house of wood and masonry, with a kitchen and other services, marked with No. 2 and situated on Brumbaugh Street of this town, measuring 12 yards (*varas*) in front by 16 deep, *standing on its own lot,* with a frontage of 11.40 meters and a depth of 14, bounded on the east and north by Brumbaugh and Robles Streets, respectively, on the south by a lot of Pedro F. Ubarri, and on the west by land of the heirs of Cristino Vilá____$2,300.

"A single-story frame house, zinc-roofed, with a kitchen and other services, measuring 17 yards in front by 16 deep, situated on Brumbaugh Street and marked with No. 4, *erected in part on the lot pertaining to the aforesaid house No. 2,* and bounded on the north by said house, on the south by a lot of Pedro F. Ubarri, on the west by that of the heirs of Cristino Vilá, and on the east by Brumbaugh Street____$650" (Italics ours.)

(*b*) Deeds of June 21, 1905, and November 16 of the same year, from which it appears that the properties above described were awarded to the plaintiffs, according to the allegations of the complaint.

(*c*) A deed of October 13, 1916, whereby Carmen Sánchez Martínez sold to Rufino Rodríguez Domínguez, for the sum of $1,000, house No. 4 on Brumbaugh Street, "transferring the same to him without any reservation or limitation."

(*d*) A copy of the record of the proceedings for judicial authorization to sell property belonging to minors. Said record contains a tax receipt covering the first semester of 1916–17, from which it appears that the taxes have been paid by the heirs of López Cepero on a lot of 315 square meters, valued at $630, and on a house valued at $2,000.

In support of the petition four witnesses testified to the effect that it was necessary to sell the house because it was in a very bad condition and the owners did not have the $1,000 necessary to make repairs that had been ordered by the health authorities. The witness Rafael López Cepero stated that the house had been assessed in its entirety at $2,630, but that really, according to his own estimate, it might be worth $3,000. Another witness, Bernardo Fernández, stated that the most that the house could be worth was from $2,000 to $2,500. José Martínez Llonín testified that he would not pay $2,500 for the house and lot and that a sale for $3,500 would be splendid.

After the sale had been authorized, and the property had been awarded at a public auction to Rufino Rodríguez Domínguez, it was discovered that through an error in the final order authorizing the sale there had been inserted the description of the property at No. 8 Brumbaugh Street, instead of that of house No. 2 on the same street, which was the property to which the witnesses testifying in the proceedings had referred. In a motion filed by the mother of the minors to annul

the auction and to amend the final order authorizing a new sale, the petitioner alleged:

"and its value being $2,300, out of that sum it was awarded $1,145 to the widow petitioner in full ownership and $1,155 in usufruct, the naked title being vested in the children and heirs Rafael, Juana Ricarda, and Florencia del Carmen López Cepero y Sánchez, *and as on the same lot the petitioning widow has built another house, a zinc, roofed frame house, which has increased the value of the entire property,* the sale of said realty has been contracted for the sum of $3,500, of which $1,700 belong to the petitioner and $1,800 to the heirs, or $600 to each." (Italics ours.)

The final order authorizing the sale of the property was rendered on March 13, 1917. On the same day there was executed the deed of sale to Sucesores de Pérez Hermanos, *S. en C.,* for $3,500. On September 26, 1933, Rufino Rodríguez, to whom the property had been awarded upon the dissolution of the partnership Sucesores de Pérez Hermanos, moved the district court for an order directing the marshal to execute an explanatory notarial act making it appear that the sale included not only the house at No. 2 Brumbaugh Street, but also the lot on which it stands. The motion was denied by the court on the ground that the marshal had not committed any error and that the court could not decree the execution of an explanatory act without first hearing the interested parties.

(e)A certificate of the registrar of property from which it appears that all the deeds above referred to are recorded in the Registry of San Juan.

In the first, second, and third inscriptions, the property appears described thus: "Urban: *house and lot* on España Street, corner of Roble Street, of the town of Río Piedras, etc." The building which is described as a two-story house is at No. 2 Brumbaugh Street. The house No. 4, built on the same lot by Vicente López Cepero, was recorded in his name (5th inscription) and described thus: *"House on a lot*

having this number, marked with No. 4 on Borinquen Street, now Brumbaugh, etc.''

In the 6th inscription wherein the award made in favor of the plaintiffs in virtue of the deed of partition was recorded there appears the following description:

''URBAN: Houses Nos. 2 and 4, on Borinquen Street, now Brumbaugh, of the town of Río Piedras, the description of the second appearing from the foregoing 5th inscription, it beging identical to the one set forth in the document presented, and the first, or No. 2, being described as a two-story house, etc.''

In the 12th inscription, wherein the sale made by the plaintiffs to Sucesores de Pérez Hermanos was recorded, the property appears described thus:

''URBAN: House No. 2 on Brumbaugh Street, of the town of Río Piedras, whose inscription and freedom from encumbrances are set forth in the *first and sixth* inscriptions, in accordance to the document presented, *wherein it is stated that another frame house, zinc-roofed, also stands on the lot.''* (Italics ours.)

The oral evidence of the plaintiffs consisted in the testimony of plaintiffs Ricarda and Carmen López Cepero, who confined themselves to the statement that they never sold the lot either to the defendant or to any other person; that they made demand upon the defendant to deliver the lot; and that the defendant refused to deliver the same.

Francisco Figueroa and Manuel Gómez testified that in their opinion the lot was worth about $10,000; that they, on behalf of the plaintiffs, had requested the defendant to return the lot, but the defendant refused to do so. The testimony of the witness Castrillo lacks importance.

The defendant introduced documentary evidence which consisted of the following:

1. Certificate of the Registry containing the same data which has already been stated.

2. Copies of the decisions rendered by the District Court of San Juan declaring barred the two actions brought in 1934 by the de-

fendant against the plaintiffs to compel the latter to execute a deed correcting those executed in 1917 by said plaintiffs.

3. Tax receipts on the real property corresponding to the fiscal years 1917 to 1939, from which it appears that the taxes levied on houses Nos. 2 and 4 on Brumbaugh Street, Río Pieras, and on the lots wherein said houses are located, were paid, as regards the former, by Sucesores de Pérez Hermanos, Rufino Rodríguez Domínguez, and the defendant; and as regards house No. 4, by Rufino Rodríguez and the defendant.

The following persons testified as witnesses for the defendant:

Adriano Bourdony: That the plaintiff Carmen López Cepero asked him to find a purchaser for the property, that is, the houses and lots; that he then fixed the following prices: small house No. 9, Robles Street, and lot, $1,100; large old house No. 2, Brumbaugh, and lot, $2,200; and small house No. 4, Brumbaugh Street, and lot, $1,200; that that valuation was accepted by Doña Carmen, who stated that she desired to sell the houses and the lot; that Rafael López Cepero, when discussing the conditions of the sale, told Rufino Rodríguez that he, Rafael, desired to remove the house on Robles Street from the whole of the property and to segregate a few meters from the lot of the large house, which is now nonexistent, in order to annex them to the lot pertaining to the house on Robles Street, and that Rodríguez objected to this.

Rufino Rodríguez Domínguez testified and corroborated the testimony of the witness Bourdony; that it was Rafael López Cepero who offered to sell the property to him; that there were then three houses standing on the land; that what they wanted was the whole property, the houses and the lots; that he offered them $4,300, and, as they refused, he raised the offer to $4,500, but Doña Carmen was undecided, and he purchased house No. 4 on Brumbaugh Street together with the lot; that Pérez Hermanos purchased the remaining portion of the property in 1917; that ever since that time he has been in possession of the houses and the lots without any-

one bothering him and without paying any lease rent on the lot, as he had purchased the same; that he had not seen Francisco García for 15 years and that the latter never spoke to him about the matter; that in 1923 he took steps in order to clarify his title because in it the word "lot" did not appear but the external boundaries of the property did appear; and he concluded by testifying as to the payment of the taxes on the houses and lots from 1917 to 1939.

In none of the deeds introduced in evidence is there express exclusion made of the land on which the houses were built. The lower court, taking into account the lack of any reservation of the land in favor of the vendors and the conduct of the contracting parties subsequent to the execution of the contracts of sale, reached the conclusion that the sale of the two houses included the sale of the land on which said houses stood.

This Supreme Court in *Chevremont* v. *Registrar of Property,* 9 P.R.R. 186, has declared "that when a building is recorded, the lot must be considered as recorded in favor of the same owner, when the latter's is not a mere right to the use of the surface of the land, on the legal presumption that he who is the owner of the building is also the owner of the soil," and that "there is no reason why this doctrine, which has been sanctioned by practice . . . . should not continue to be applied in all cases, provided that the legal presumption on which it is based is not destroyed by sufficient proof to the contrary."

The American decisions hold as a general rule of construction that the conveyance or sale of a "house" or "building" passes the title to the land on which the house or building stands, in the absence of some term or clause restrictive of that meaning. See *Ansin* v. *Taylor,* (Mass.) 159 N. E. 513; *Tadlock* v. *Mizell,* (N. C.) 142 S. E. 713. In *Broadhurst* v. *Mewborn,* 171 N. C. 400, 402, 88 S. E. 629, it was held:

"The devise of a 'house,' when referring, as in this case, to the dwelling-house of the owner, has been held the equivalent of the

word messuage, and in the absence of some term or clause restrictive of its meaning, it is said to convey the lot on which the dwelling is situated, together with the outbuildings customarily used by the owner as a part of his residence.''

See also *State* v. *Board of Education,* 71 W. Va. 52, 76 S. E. 127; *Gidley* v. *Lovenberg,* 35 Tex. Civ. App. 203, 209, 79 S. W. 831, 835; *Gibson* v. *Brockway,* 8 N. H. 465, 31 Am. Dec. 200; note on 15 L. R. A. 652; 18 C. J. 296.

In the case at bar, the legal presumption that the plaintiffs, when selling the two houses without making any reservation or limitation in their favor covering the lots, also sold the land on which the houses are situated, has not been overcome nor even controverted by any proof to the contrary. The evidence, when examined as a whole, far from destroying said presumption rather ratifies and confirms the same. Mrs. Carmen López Cepero, for herself and on behalf of her children, intrusted to an agent the task of finding a purchaser for the houses and lots and she discussed and accepted the valuation put by said agent upon each of the houses and lots. In the description of house No. 2, Brumbaugh Street, as set forth in the deed of partition, it is stated that said house is *standing on its own lot,* and in describing house No. 4 on the same street, it is stated that the same was *erected in part on the lot pertaining to the aforesaid house No. 2.* In the record of the proceedings for judicial authorization to sell the undivided interest of the minors, the mother and guardian of the latter stated that, as on the same lot, that is, the lot on which house No. 2, Brumbaugh Street, stood, she had built another house which had increased the value of the whole property, for that reason the sale of the realty had been contracted for the sum of $3,500. And at this point it would seem proper to ask: If, as plaintiffs claim, what was to be sold was house No. 2, exclusively, without the lot, what importance could it have for the fixing of the selling price the fact that on the same lot there had been erected

another small frame house, since the latter was not to be conveyed to the purchaser as an annex or appurtenance to the lot on which said house and the other building were situated? The evidence established the fact that in discussing the deal one of the plaintiffs sought to exclude said small house and a part of the lot, and that the purchaser refused to do it.

In recording in the registry the sale of house No. 2 on Brumbaugh Street from the plaintiffs to Sucesores de Pérez Hermanos, reference was made to the description set forth in the first inscription and in said inscription the property is described thus: "Urban: House and lot." In the record of said sale it was also declared that in the document presented "it is stated that another frame house, zinc-roofed, also stands on the lot."

Since 1917, when the sale of the two houses, according to the plaintiffs, and of the houses and lots, according to the defendant, took place, until August 10, 1938, or for a period of 21 years, the defendant has been in possession of the houses and the lots, as owner, without his possession or title having been challenged by the plaintiffs. During those 21 years the defendant and his predecessor in title have paid the taxes levied on the houses and their respective lots, without the plaintiffs at any time throughout such a long period having taken care to pay said taxes or to ascertain whether any other person was paying the same.

Taking into account all the circumstances and facts above set forth, we must reach the conclusion that the trial court did not err in weighing the evidence, nor in holding that the facts and the subsequent conduct of the parties clearly showed that the plaintiffs in selling the houses also sold the land on which the same stood.

There was no error in awarding costs and attorney's fees; but since the sum of $500 allowed for attorney's fees is not justified, we think that the same should be reduced to $300.

The judgment appealed from must be modified by reducing to $300 the amount which the plaintiffs must pay as attorney's fees, and as thus modified the judgment is affirmed.

Mr. Chief Justice Del Toro and Mr. Justice De Jesús took no part in the decision of this case.